IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK L. MORRIS, | No. CIV S-08-1889-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 20) and defendant's cross-motion for summary judgment (Doc. 26).

///

///

///

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on May 11, 2006. In the application, plaintiff claims that disability began on May 31, 2000. Plaintiff claims that disability is caused by a combination of various physical and mental impairments. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on December 4, 2007, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In a May 5, 2008, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

    1.    The claimant has the following severe impairments: low back pain, secondary to lumbosacral strain with no evidence of radiculopathy; alcoholic liver disease with history of heavy alcohol abuse; leg pain status post gunshot wound; rule out malingering; rule out learning disorder not elsewhere specified; rule out post-traumatic stress disorder;

    2.    The claimant does not have an impairment or combination of impairments that satisfy the regulations;

    3.    The claimant has the residual functional capacity to perform medium work requiring no greater than simple, unskilled work; and

    4.    Considering the claimant's age, education, work experience, and residual functional capacity, the regulations establish that there are jobs that exist in significant numbers in the national economy that claimant can perform.

After the Appeals Council declined review on June 14, 2008, this appeal followed.

## II. SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below. Because plaintiff only raises issues relating to the ALJ's analysis of his mental impairment, the court need not summarize records relating to any other impairment.

/ / /

/ / /

/ / /

       <u>August 10, 2001</u> – Gary S. Rinzler, M.D., of Kaiser Permanente reported on an initial evaluation conducted for purposes of a disability assessment. The doctor provided the following history:

> This 34-year-old gentleman is referred for evaluation of his disability, apparently the product of several areas of pain from a bullet removal in his leg, chronic low back pain, and vague neurocognitive complaints related to his chronic alcoholism, childhood developmental problems, concussions, etc.

Plaintiff told the doctor he drinks a case-and-a-half of beer daily for the past five years, though he also stated that he stopped drinking "about one year ago." Based on clinical data available at the time, Dr. Rinzler opined that plaintiff had "[n]o physical or cognitive impairment that could justify disability. . . ."

       <u>November 12, 2007</u> – Examining psychologist Mechelina Regazzi, Ph.D., reported on a psychological evaluation. As to alcohol use, plaintiff reported that he used to drink heavily but stopped in 2000. He admitted to continuing to drink "about a six-pack a year." As to daily activities, Dr. Regazzi stated:

> Mr. Morris stated that he gets up by 5:00 a.m. He stated that his bathing and grooming habits are fine. When asked how he spends his day he reported that he does nothing. He stated that he cooks something to eat and then walks around outside. He makes simple meals for himself. His grandmother does the chores. He stated that he has a valid driver's license and his own vehicle. However, he stated that he gets dizzy spells once in a while to he walks sometimes or takes the bus. He stated that his grandmother does the shopping. He stated that he gets confused sometimes when making purchases. Further, he stated that he has never lived all by himself and that someone else always handled the finances.
>
> With regard to his sleep, he stated that he sleeps okay and does not nap in the day. He stated that his appetite has gone down and he eats once per day. He added that in December he weighed 386 lbs. and that he now weighs 260 lbs.

Based on mental status examination results, Dr. Regazzi offered the following opinions:

> <u>Present Daily Activities</u>: He is capable of carrying out his personal care and daily living tasks. He reports that he is capable of traveling independently. He is incapable of carrying out tasks that require written communication such as understanding business letters and completing forms. He is capable of self-direction such as seeking food and shelter for

3

his behalf.  There are mild impairments in his daily living activities.

<u>Social Functioning</u>: Mr. Morris appears to have the ability to form and maintain close relationships with others.  He did not report having any significant impairments in his work relationships.

<u>Concentration, Pace, and Task-Completion</u>: Mr. Morris has sufficient concentration to carry out discrete, time-limited tasks.  However, due to his limited cognitive ability, he would have difficulty in carrying out these tasks at a sufficient pace.  His ability to learn and carry out tasks at the pace of his peers is considered to be severely impaired.

<u>Adaptation to Work or Work-Like Situations</u>: Mr. Morris has severe intellectual deficits that would impair his ability to maintain full-time competitive employment.

The doctor also concluded that plaintiff was incapable of handling his own funds.

<u>February 22, 2008</u> – Agency examining psychologist David C. Richwerger, Ed.D., reported following a comprehensive psychological evaluation.  Based on clinical testing data, the doctor could not rule out malingering, possible learning disorder, or possible post-traumatic stress disorder.  Dr. Richwerger offered the following conclusions:

It is unclear if the claimant is capable of managing his own funds due to performance inconsistencies on the testing.

If malingering could be ruled out by the presence of other data (which does appear unlikely given the results of the TOMM) then the claimant would likely have more severe limitations.

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must

4

be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## IV. DISCUSSION

In his motion for summary judgment, plaintiff argues: "The ALJ failed to properly develop the record to rule out malingering and as a result rejected Mr. Morris's low IQ scores and failed to properly assess where his mental impairment met or equaled the criteria under [the regulations]." The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d

599, 602 (9th Cir. 1998)).

Plaintiff's argument focuses on Dr. Richwerger's statement concerning malingering. Specifically, plaintiff asserts:

> . . . Dr. Richwerger . . . opined that the low IQ scores reflected on his testing were invalid due to a low level of effort suggested by the TOMM results. Dr. Richwerger clarified, however, that "if malingering could be ruled out by the presence of other data (which does appear unlikely given the results of the TOMM) then the claimant would likely have more severe limitations." TR 252. Dr. Richwerger conceded that the TOMM testing was inconclusive and assessed Mr. Morris with a "rule out malingering" diagnosis instead of a straight "malingering" diagnosis. The key to resolving the issue of malingering then, was the presence of other collateral data which supported or refuted malingering. Dr. Richwerger himself noted that if malingering could be ruled out by the presence of other data, Mr. Morris would likely have more severe limitations and a GAF in the 50 range – the same range assessed by Dr. Regazzi. . . . Without attempting to secure any "other data," the ALJ summarily rejected Mr. Morris's low IQ scores based on the inconclusive results of the TOMM test administered by Dr. Richwerger. TR 11. As a result, the ALJ failed to even analyze whether Mr. Morris met listing 12.05(c).

According to plaintiff, the ALJ should have obtained collateral data from school records. Plaintiff states that "[a] review of Mr. Morris's school records would have confirmed his placement in special education classes" and would have allowed Dr. Richwerger to rule out malingering.

The court finds that plaintiff's argument is unpersuasive. The ALJ's duty to develop the record is only triggered when the evidence is ambiguous or inadequate to allow the ALJ to reach a disability decision. Such was not the case here. To the contrary, the evidence in this case was sufficient to allow the ALJ to determine that plaintiff is not disabled. Specifically, Dr. Rinzler opined that plaintiff did not have any cognitive impairment that could justify disability. Further, Dr. Richwerger opined that it was unlikely that other data could allow him to rule out malingering. Finally, if school records existed which supported plaintiff's claim, it was his responsibility to present such records to the ALJ.

/ / /

/ / /

### V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.      Plaintiff's motion for summary judgment (Doc. 20) is denied;

        2.      Defendant's cross-motion for summary judgment (Doc. 26) is granted; and

        3.      The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 23, 2010

                                                                    **CRAIG M. KELLISON**
                                                                      UNITED STATES MAGISTRATE JUDGE